UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN ROCHE , D.C., d/b/a/ BACK DOCTORS, LTD., individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL MANAGED CARE, INC., LIBERTY MUTUAL INSURANCE COMPANY, and LIBERTY MUTUAL FIRE INSURANCE COMPANY d/b/a/LIBERTY MUTUAL,<br><br>Defendant. | Case No. 07-cv-331-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (Doc. 33). Plaintiff has responded (Doc. 38) and Defendant has replied (Doc. 44). The Court has reviewed the filings, and hereby ORDERS Plaintiff to SHOW CAUSE why her breach of contract claim should not be dismissed for the reasons set forth below by the Court.

### BACKGROUND

**I.     PPOs and Silent PPOs[1]**

Health insurance plans can be broadly divided into two large categories: indemnity plans (also referred to as "reimbursement" plans), and managed care plans. Indemnity plans reimburse the patient for his medical expenses regardless of who provides the service. Managed

---

[1]The Court has drawn this background information from the operative Complaint, Senate and Congressional Reports on PPOs, and materials from the American Hospital Association and the American Medical Association.

care plans, on the other hand, involve an arrangement between the insurer and a selected network of health care providers. Managed care plans offer patients significant financial incentives to use the providers in that network.

A Preferred Provider Organization (PPO) is a managed care technique that has risen in popularity in recent years. Parties to a typical PPO include a health care provider, a PPO network administrator, and various kinds of payors, that is, those companies or entities that are obligated to provide medical benefits to the provider's patients. Payors may be insurance carriers, health care service plans, employers, trusts, nonprofit health service plans, governmental units and the like.

Generally, health care providers sign a contract with PPO network administrators in which they agree to accept from PPO payors a rate discounted from their usual and customary rates as payment in full for services provided to the payor's beneficiaries. In exchange, the network administrators promise providers that the payors who join the PPO will pay the provider promptly and/or provide "steerage," that is, financial incentives to their beneficiaries to encourage the beneficiaries to choose PPO providers. The contract between the provider and the PPO network administrator is the "provider agreement." The contract between the PPO network administrator and the payor is the "payor agreement." The provider agreement may or may not delineate who can contract to be a PPO payor.

A silent PPO is a term of art for a kind of PPO abuse. Essentially, a silent PPO occurs when a payor receives a PPO discount to which he is not entitled. For example, suppose a patient with an indemnity insurance plan goes to a provider who is part of a PPO. By definition, the patient with an indemnity insurance plan is not steered toward a provider, but is free to

2

choose any provider he wishes. The patient typically pays a percentage of the total bill and his insurance pays the rest. In a silent PPO, after the patient pays his share of the bill and the provider submits the outstanding balance to the payor for payment, the payor notices that the provider is a member of a PPO. The payor then proceeds to pay the provider at the PPO discounted rate, instead of the usual and customary rate. If the payor and provider are both members of the PPO, this discount payment may constitute a breach of the PPO contract. If the payor is not a member of the PPO, but pays only the PPO rate, this discount payment may constitute fraud. The conduct at issue in this case falls within the first silent PPO scenario.

**II.      Facts**

Plaintiff Kathleen Roche is a licenced healthcare provider who signed a provider agreement with First Health Group Corp. (First Health), thereby becoming a provider with the First Health PPO network. Defendant Liberty Group (Liberty) signed a payor agreement with First Health, thereby becoming a payor with the First Health PPO network.

In 2003, Roche treated a patient, who was a covered claimant under a Liberty insurance policy, at her offices in St. Clair County, Illinois. The claimant sustained injuries in a covered occurrence, and was entitled to have Liberty pay for her medical services. However, the claimant was not covered under a Preferred Provider or Exclusive Provider insurance plan. In fact, Liberty had never even established a Preferred Provider or Exclusive Provider program for its claimants or beneficiaries. Accordingly, neither Liberty nor First Health referred the patient to use Roche's services. They did nothing to steer or direct the patient in any way to Roche, nor did they make any attempt to discover if Roche was a PPO provider before Roche provided her services to the patient.

3

Roche submitted a bill for her usual and customary charges to Liberty. Liberty then submitted the bill to First Health for review. Upon determining that Roche was a First Health PPO provider, Liberty tendered payment to Roche at the PPO discounted rate for the services provided, along with an explanation of reimbursement form (EOR). The EOR represented that the claim had been reimbursed pursuant to the First Health Network and stated, "This preferred provider has agreed to reduce this charge below fee schedule or usual and customary charges for your business." It also explained "This bill was reviewed in accordance with your contract with First Health." Roche contends that Liberty was not entitled to take the PPO discount and is liable to her for the difference between her usual and customary rate and the PPO rate Liberty paid. Roche advances the alternate theories of breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act.

## ANALYSIS

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam ) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007). The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007)(quoting *Twombly*, 127 S.Ct. at 1965 (2007)) (internal quotations omitted).

The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. Moreover, the Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *R.J.R. Services Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969 n. 8.

**I.     Breach of Contract Claim**

As previously noted, Roche had signed a provider agreement[2] with First Health pursuant to which she became a First Health PPO network provider. Although it may not appear that there is a contractual relationship between Roche and Liberty, Roche contends that the provider agreement and the payor agreement together constitute a contract between herself and Liberty. An implied term of this contract is that Liberty would steer patients to Roche in exchange for receiving the PPO discount rate. Liberty protests that there is no contract between it and Roche. However, a cursory review by the Court of the express terms of Roche's contract with First Health seems to preclude her from prevailing on the breach of contract theory she advances.

**A.     Illinois Contract Law**

The provider agreement specifies that the contract is governed by Illinois law. Under Illinois law, when construing a contract, the Court must give effect to the intent of the parties. *First Bank & Trust Co. v. Village of Orland Hills*, 787 N.E.2d 300, 304 (Ill. App. Ct. 2003). If

---

[2]Roche attached a copy of her provider agreement with First Health to the operative complaint. As such, it is properly before the Court on this motion to dismiss. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

the terms of a contract are unambiguous, the parties's intent is ascertained solely from the words of the contract itself. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill.1999); *Regency Commercial Associates, LLC v. Lopax, Inc.*, 869 N.E.2d 310, 316 (Ill. App. Ct. 2007). It is the Court's duty to construe and enforce the contract as it was written. *Shaffer v. Liberty Life Assur. Co. of Boston*, 746 N.E.2d 285, 288 (Ill. App. Ct. 2001). "[P]arties' rights under a contract are limited by the terms expressed therein and a contract must be read in its entirety and effect given to each of its provisions." *Moody v. Federal Exp. Corp.*, 858 N.E.2d 918, 921 (Ill. App. Ct.2006). Unless the language of the contract is ambiguous, one party's particular interpretation of its terms at the time of execution is immaterial. *Am. Nat'l Trust Co. of Chi. v. Ky. Fried Chicken of S. Cal., Inc.*, 719 N.E.2d 201, 211 (Ill. App. Ct. 1999). Courts are not in the business of rewriting contracts to provide a better bargain for one of the parties. *See Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 154 (Ill. App. Ct. 2000). Furthermore, "the law is clear that an implied contract cannot coexist with an express contract on the same subject." *Maness v. Santa Fe Park Enterprises, Inc.*, 700 N.E.2d 194, 200 (Ill. App. Ct.1998) (listing cases).

### B. Terms of the Provider Agreement

The Provider Agreement states:

Provider[3] understands that by execution of this Agreement, Provider agrees to participate in a Preferred Provider Panel (PPO Plan) being created by First Health. Provider further understands that First Health will offer to certain Payors the opportunity to contract with First Health to utilize the services of the health care providers participating in the Preferred Provider Panel. . . . First Health's Payor Agreement with each Payor utilizing Provider's services will require Payor to comply with terms and conditions of Article 4 (Payment Provisions) of this

---

[3]"Provider" was defined in section 1.1 as Roche.

Agreement.
Provider Agreement §1.5

The Payment Provisions section of the contract contains a Billing Procedure and a Reimbursement Procedure. The Reimbursement Procedure guarantees that the provider will receive payment within 30 days of receipt of a properly submitted bill. The Payment Provisions section also contains the following language:

> Pursuant to each Payor's Payor Agreement with First Health, Payor shall be liable for the lesser of Provider's billed charges or the amount set forth in Appendix A of this Agreement,[4] less any amounts of copayments, deductibles, and coordination of benefits, when Covered Services are provided to a Participating Patient.

Provider Agreement §4.2(a)

A "Participating Patient" is defined as someone "who ha[s] elected to receive care from Provider and who [is] covered by the Payor's Benefit or Insurance Plan," and a "Covered Medical Service" is defined as "[a] service provided to a Participating Patient for which the Payor is obligated to pay pursuant to the Payor's Health Plan." "Health Plan" is then broadly defined as follows:

> "Health Plan" means any contract, certificate, policy, plan document or other legally enforceable instrument and amendments thereto issued, sponsored or administered by a Payor under which a Participating Patient may be entitled to health services or health service benefits. These Health Plans *may include, but are not limited to, indemnity plans, health maintenance organizations, insurance group health plans, and worker's compensation plans*.

Provider Agreement § 2.3 (emphasis added).

It appears to the Court that under the express terms of the contract, Roche agreed to accept the PPO discounted rate from Health Care's Payors (such as Liberty) even when the Payor's health plan is not a PPO plan. As the Court understands the contract, even if Roche's

---

[4]Appendix A lists the provider's discount rates for the services performed.

patient is covered under an indemnity plan administered by Liberty, which by definition *precludes steerage*, Roche has still agreed to accept the PPO rate from Liberty. Therefore, it appears that the steerage obligation that Roche wants the Court to find implicit in the contract between her and Liberty would directly contradict the express terms contained in her Provider Agreement. If that is indeed the case, it follows that the Court could not infer such a term.

However, Roche contends that steerage "is the *sine qua non* of the PPO form of managed care, and the essential benefit and consideration from the payors to the preferred providers." This appears to be a contention by Roche that if steerage is not an implied term of the contract, the contract must fail for lack of consideration.

"[A]ny act or promise which is of benefit to one party or disadvantage to the other" can constitute consideration adequate to support a contract. *Ahern v. Knecht*, 563 N.E.2d 787 791 (Ill. App. Ct. 1990). A court will generally not inquire into the sufficiency of the consideration, provided the amount of consideration is not "so grossly inadequate as to shock the conscience of the court." *Id*. Here, the Provider Agreement signed by Roche guarantees that she will receive payment for her services within 30 days after billing. This appears to the Court to be adequate consideration to support the contract.

Therefore, it appears to the Court that the prompt payment guarantee is adequate consideration to support the contract, and that the express terms of the Provider Agreement preclude the Court from finding an implied term of "steerage" in the contract. However, the parties's briefs have not addressed the possibility that the express language of the contract precludes Plaintiff from prevailing on her breach of contract claim. Therefore, the Court will allow supplementary briefing on this issue.

## CONCLUSION

The Court **ORDERS** Plaintiff to **SHOW CAUSE** why the Defendant's Motion to Dismiss as to her breach of contract cause of action should not be granted for the reasons set forth in this Order. Plaintiff **SHALL** file a brief of not more than twenty (20) pages addressing the issues raised in this Order not later than thirty (30) days from the date of entry of this Order. If Defendant wishes to address the issues raised herein, Defendant **SHALL** do so by a brief of not more than twenty (20) pages filed not later than thirty (30) days from the date of entry of this Order.

**IT IS SO ORDERED.**
**DATED: June 30, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**