UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN ROCHE, D.C., d/b/a/ BACK DOCTORS, LTD., individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY MUTUAL MANAGED CARE, INC., LIBERTY MUTUAL INSURANCE COMPANY, and LIBERTY MUTUAL FIRE INSURANCE COMPANY d/b/a/LIBERTY MUTUAL,<br><br>    Defendant. | Case No. 07-cv-331-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (Doc. 33) to which Plaintiff has responded (Doc. 38) and Defendant has replied (Doc. 44). Also before the Court is Defendant's Motion to Stay Pursuant to the Colorado River Doctrine (Doc. 35) to which Plaintiff has responded (Doc. 39) and Defendant has Replied (Docs. 42 and 43).[1] For the following reasons, the Court DENIES Defendant's Motion to Stay and GRANTS Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiff Kathleen Roche is a licenced healthcare provider who signed a provider

---

[1] Plaintiff and Defendant have responded to the Court's Order to Show Cause (Doc. 47). The Court had asked for briefing from the parties as to whether the language of the Provider Agreement precluded Plaintiff from prevailing on her breach of contract claim. The Court's analysis in this Order is independent of the question raised in the Order to Show Cause.

1

agreement with First Health Group Corp. (First Health), thereby becoming a provider with the First Health Preferred Provider Organization (PPO).[2] Defendant Liberty Group (Liberty) signed a payor agreement with First Health, thereby becoming a payor with the First Health PPO.[3] Liberty was not a party to the Provider Agreement. Roche was not a party to the Payor Agreement.

In 2003, Roche treated a patient, who was a covered claimant under a Liberty insurance policy, at her offices in St. Clair County, Illinois. The claimant sustained injuries in a covered occurrence, and was entitled to have Liberty pay for her medical services. However, the claimant was not covered under a Preferred Provider or Exclusive Provider insurance plan. In fact, Liberty had never even established a Preferred Provider or Exclusive Provider program for its claimants or beneficiaries. Accordingly, neither Liberty nor First Health referred the patient to use Roche's services. They did nothing to steer or direct the patient in any way to Roche, nor did they make any attempt to discover if Roche was a PPO provider before Roche provided her services to the patient.

Roche submitted a bill for her usual and customary charges to Liberty. Liberty then submitted the bill to First Health for review. Upon determining that Roche was a First Health PPO provider, Liberty tendered payment to Roche at the PPO discounted rate for the services provided, along with an explanation of reimbursement form (EOR). The EOR represented that the claim had been reimbursed pursuant to the First Health Network and stated, "This preferred

---

[2]Roche attached a copy of the Provider Agreement to her Second Amended Complaint.

[3]Although Plaintiff has repeatedly asserted that she attached a copy of the Payor Agreement under seal for the Court's in camera review, in fact, the Court has never received a copy of the Payor Agreement.

2

provider has agreed to reduce this charge below fee schedule or usual and customary charges for your business." It also explained "This bill was reviewed in accordance with your contract with First Health." Roche contends that Liberty was not entitled to take the PPO discount and is liable to her for the difference between her usual and customary rate and the PPO rate Liberty paid. Roche advances the alternate theories of breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act.

**ANALYSIS**

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam ) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007). The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007)(quoting *Twombly*, 127 S.Ct. at 1965 (2007)) (internal quotations omitted).

The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. Moreover, the Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *R.J.R. Services Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989). However, "when a complaint adequately states a claim, it may not be dismissed based on a

district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969 n. 8.

**I.    Breach of Contract Claim**

Liberty contends that Roche has failed to state a claim for breach of contract because she can point to no contractual duty owed her by Liberty. "In Illinois, in order to plead a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). Only a duty imposed by the terms of a contract can give rise to a breach. *Id*. Roche concedes that she has no direct contract with Liberty, but urges the Court to read the Payor Agreement and the Provider Agreement as one instrument. Therefore, Roche contends, Liberty can be held liable to Roche for breaching the terms of either the Provider Agreement or the Payor Agreement.

Under Illinois law, "different instruments executed by the same parties, at the same time, for the same purpose, and in the course of the same transaction, are regarded as one instrument and will be read and construed together." *Illinois Housing Development Authority v. LaSalle Nat'l Bank*, 478 N.E. 2d 772, 775 (Ill. App. Ct. 1995) (citing *Thread & Gage Co. v. Kucinski*, 451 N.E.2d 1292 (Ill. App. Ct. 1983)). However, "two agreements executed by different parties cannot be regarded as one instrument." *Id*.; *Susmano v. Associated Internists of Chicago, Ltd.*, 422 N.E.2d 879, 883 (Ill. App. 1981); *Ill. Hous. Dev. Auth. v. LaSalle Nat'l Bank*, 487 N.E.2d 772, 776 (Ill. App. 1985).

Here, the Provider Agreement was entered into in November 1, 1999 and the Payor

4

Agreement was entered into in January 1, 2002, over two years apart. The only party in common to the two agreements is First Health, which is not a party to the case at bar. Furthermore, although the Provider Agreement refers to the existence of "Payors" and "Payor Agreements," it does not identify who will be party to the Payor Agreements, except to say that a payor may be "any . . . entity which has contracted with First Health to use First Health's PPO Plan." In sum, these agreements are different instruments, executed by different parties, at different times. Therefore, under Illinois law, they cannot be regarded as one instrument and read together. As Liberty was not a party to the Provider Agreement, it cannot be held liable for breach of the terms of that agreement. Furthermore, as Roche was not a party to the Payor Agreement, she cannot state a claim for breach of its terms unless she was a third party beneficiary to the Agreement. In Illinois, one who is not a party to the contract she seeks to enforce must sue under a third-party beneficiary theory. *Jones v. Chicago HMO Ltd. of Illinois*, 730 N.E.2d 1119 (Ill. 2000). Third-party beneficiary law allows a non-party to a contract to sue for breach of the contract when the contract is entered into for the direct benefit of, as opposed to the merely incidental benefit of, the non-party. *Olson v. Ehtheridge*, 686 N.E.2d 563, 566 (Ill. 1997); *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 612 (Ill.App.Ct. 1999). "The express language of the contract and the surrounding circumstances at the time the contract was executed determine whether or not the contracting parties intended to benefit a third party directly." *F.W. Hempel & Co., Inc. v. Metal World, Inc.,* 721 F.2d 610, 613 (7th Cir. 1983) (*citing Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill.1931)).

It is possible that Roche could show that she was an intended third-party beneficiary to the Payor Agreement. However, the Second Amended Complaint does not allege sufficient facts

to raise this right to relief above a speculative level. Therefore, in accord with the standard articulated in *Bell Atlantic Corp v. Twombly*, 127 S.Ct. at 1965, the Court will dismiss Count I of the Second Amended Complaint. However, the Court will allow Plaintiff to amend her complaint in order to allege facts sufficient to put Defendant on notice that Roche is entitled to relief as a third party beneficiary to the Payor Agreement, if indeed that is the case.

**II.     Count II - Unjust Enrichment**

Liberty contends that the Court should dismiss Roche's claim that Liberty was unjustly enriched by retaining improperly appropriated PPO network discounts because the claim is based on an alleged express contract. Roche counters that she has successfully pled the unjust enrichment claim in the alternative.

Plaintiffs are permitted to plead alternative, even inconsistent, theories of recovery. Fed. R. Civ. P. 8(d). Therefore, the mere fact that Roche alleges both breach of contract (based on an express contract) and unjust enrichment (based on an implied contract) dealing with the same subject matter is not grounds for dismissal. "Nonetheless, while plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract, which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel." *The Sharrow Group v. Zausa Development Corp.*, 2004 WL 2806193 (N.D. Ill. 2004) (listing cases); *See also, Canadian Pacific Railway Co. v. Williams-Hayward*, 2003 WL 1907943 at *5 (N.D. Ill. 2003); *Team Impressions, Inc. v. Chromas Technologies Canada, Inc.*, 2003 WL 355647 at *4 (N.D. Ill. 2003); *SMC Corp. v. Peoplesoft USA, Inc.*, 2004 WL 2538641 at *3 (S.D. Ind. 2004); *Cole-Haddon, Ltd. V. Drew Phillips Corp.*, 454 F.Supp.2d 772, 777 (N.D. Ill. 2006); *People ex rel.*

*Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165 (Ill. 1992).

Here, Roche's allegations of unjust enrichment include allegations that an express contract governs the relationship between the parties. First, Roche incorporates the allegations of her breach of contract count into her unjust enrichment count. Second, Roche alleges that Liberty was unjustly enriched when it "failed to provide the bargained for exchange to Plaintiff and the Class by retaining the PPO discounts." This is merely a reiteration of Plaintiff's earlier breach of contract claim. Therefore, the Court finds that this count was not properly pled and must be dismissed. However, the Court will allow Plaintiff an opportunity to correct the deficient pleading.

### III.  Count III - Illinois Consumer Fraud Act

Roche alleges that Liberty violated the Illinois Consumer Fraud Act (ICFA) when it sent Roche EORs in which Liberty purported to be entitled to the First Health PPO discount knowing that it had not provided steerage in exchange for the discount. Liberty argues that Roche ICFA claim does not allege any fraudulent conduct. Rather, Liberty argues, Roche merely alleges that Liberty did not fulfill its contractual obligations under the Payor Agreement.

The ICFA prohibits the use of unfair or deceptive business practices, "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact. . . ." 815 ILCS 505/2. The elements of an ICFA action are: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the

plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). Simple breach of contract, that is "the mere fact that the defendant promised to do something and then failed to do it," is not actionable under the Consumer Fraud Act. *Id*. at 843 (*citing Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988 (Ill. 2000)).

Here, Roche alleges that Liberty claimed it was entitled to the PPO discount, even though Liberty knew that it was in breach of its contractual obligations under the Payor Agreement. While this may be "unfair" in the colloquial meaning of the word, these allegations cannot support an ICFA claim. Instead, these allegations amount to nothing more than simple breach of contract.

Roche also alleges:

> Liberty's operation of a 'silent PPO' oppressively reduces the reasonable reimbursement of healthcare providers without the reciprocal steerage in violation of public policy. The fact that Liberty engages in a legitimate PPO with First Health in other states - just not in Illinois - further demonstrates Liberty's unfair conduct in Illinois as to First Health Network providers.

In other words, the fact that Liberty purports to be a part of a PPO but does not provide steerage to the providers of that PPO is an unfair or deceptive practice, because without steerage there is no legitimate PPO.

In the context of the Lanham Act, Seventh Circuit roundly rejected this contention. *First Health Group Corp. v. BCE Emergis Corporation*, 269 F.3d 800, 805-6 (7th Cir. 2001). In *First Health*, Plaintiff argued that Defendant UP & UP was falsely holding itself out to be a PPO even though it did not steer its insureds to network providers. *Id*. at 801. The Seventh Circuit distinguished between "directed PPOs," those that steer patients toward network providers, and "non-directed PPOs" that do not. *Id*. at 804. Both may properly use the term "PPO" or the

phrase "preferred provider network." *Id*. at 805. Here, Liberty belongs to a PPO network which allegedly employs the business model of a "non-directed PPO." Because the use of the term PPO is an accurate description of such a business model, Liberty has not engaged in fraudulent conduct by purporting to be a member of a PPO.[4]

To the extent that Roche asserts that Illinois law requires a PPO payor to provide steerage, this argument, too, must fail. The Illinois Health Care Reimbursement Reform Act of 1985 provides that:

> (b) An insurer or administrator may:
> (1) enter into agreements with certain providers of its choice relating to health care services which may be rendered to insureds or beneficiaries of the insurer or administrator, including agreements relating to the amounts to be charged the insureds or beneficiaries for services rendered;
> (2) issue or administer programs, policies or subscriber contracts in this State that include incentives for the insured or beneficiary to utilize the services of a provider which has entered into an agreement with the insurer or administrator pursuant to paragraph (1) above.

215 ILCS 5/370i

The statute clearly allows PPOs to provide incentives for patients to use certain providers. However, the language is permissive only, not mandatory. As to non-incentive steering mechanisms, such as provider panels, the statute is silent. Furthermore, the regulation cited by Roche that requires PPO administrators to register with the Director of Insurance is not applicable to Liberty, because Roche does not allege that Liberty is a PPO administrator. Therefore, even accepting as true all factual allegations in the Complaint, Roche has not alleged

---

[4] In contrast, if Roche had alleged that Liberty took the PPO discount in the absence of an agreement with the PPO network, she may have properly stated a claim for consumer fraud. *See, Roche v. Country Mut. Ins. Co.*, 2007 WL 2003092 (S.D.Ill. 2007). However, here, Roche acknowledges that Liberty was a payor in the First Health PPO network.

any conduct by Liberty that violates Illinois law or policy or that constitutes an unfair or deceptive practice. Therefore, Count III fails to state a claim under the ICFA. Accordingly, the Court dismisses Count III.

In light of the foregoing, the Court denies as moot Defendant's Motion to Stay.

## CONCLUSION

The Court **GRANTS** Defendant's Motion to Dismiss (Doc. 33) and **DENIES as moot** Defendant's Motion to Stay (Doc. 35). The Court **DISMISSES** Counts I and II **without prejudice**. The Court **DISMISSES** Count III **with prejudice**. The Court **GRANTS** Plaintiff **leave to amend** Counts I and II of her complaint **within 30 days** from the entry of this Order. Failure to file an amended complaint will result in dismissal of this action. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**
**DATED: September 23, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**